## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **PEDRO A. DIAZ,** | ) | **CASE NO. 3:17CV1279** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE JOHN R. ADAMS** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **JOHN COLEMAN,** | ) | **JONATHAN D. GREENBERG** |
| **Warden** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Pedro A. Diaz ("Diaz" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Diaz is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Diaz*, Lucas County Court of Common Pleas Case No. G-4801-CR-200502072-000.

For the following reasons, the undersigned recommends the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Diaz's conviction as follows:

> {¶ 7} At trial, the following facts were adduced. On January 10, 2004, an armed robbery took place at Tamara's Carryout, in Lucas County, Ohio. Forty-seven year old Misada Shalan, who was present inside the carryout at the time of the robbery, died from a single gunshot wound to her head.
>
> {¶ 8} There were three participants in this crime: appellant, Ivan Garcia, and Ronald Whitfield. Garcia, who had helped plan the robbery, waited outside in a stolen Jeep Cherokee while Whitfield and appellant entered the store. Whitfield entered first, armed with an assault rifle. Appellant, carrying a .38 caliber handgun, followed immediately behind and, upon entering the store, fired his handgun in the air at least three times. Whitfield fired his weapon once, killing Misada with a single round to the head.
>
> {¶ 9} After the shooting, appellant instructed Whitfield to get the money from Shalan's husband, Fuad Shalan. Whitfield did as he was told, then handed the money to appellant. Whitfield and appellant then left the store, jumped into the stolen car and, together with Garcia, fled the scene. The three went to a bar, where they divided the money taken in the robbery. Later, Whitfield and Diaz burned the stolen car.

*State v. Diaz,* 2007 WL 2458448, at *1 (Ohio App. 6th Dist. Aug. 31, 2007).

## II. Procedural History

### A.    Trial Court Proceedings

In May 2005, a Lucas County Grand Jury charged Diaz with (1) one count of aggravated murder in violation of Ohio Rev. Code ("O.R.C.") §2903.01(B) and (F) (Count One) and (2) one count of aggravated robbery in violation of O.R.C. §2911.01(A)(1) (Count Two).  (Doc. No. 10-1, Exh. 1.)  Both charges carried firearm specifications.  (*Id.*)  Diaz pled not guilty to all Counts. (Doc. No. 10-1, Exh. 2.)

On June 19, 2005, Diaz, through counsel, filed a Motion to Suppress statements he had made to the police.  (Doc. No. 10-1, Exh. 3.)  A hearing regarding this Motion was held on July 2, 2005.  (Doc. No. 10-3, Tr. 1-32.)  The state trial court denied the Motion to Suppress on

2

August 9, 2005.  (Doc. No. 10-1, Exh. 4.)

The case proceeded to a jury trial commencing October 24, 2005.  (Doc. No. 10-4, Tr. 1.) Pursuant to Ohio. Crim. R. 29, Diaz moved for an acquittal at the close of the State's case, which the trial court denied.  (Doc. No. 10-6, Tr. 44-45.)  The jury found Diaz not guilty of aggravated murder, but guilty of the lesser included offense of murder (Count One) and aggravated robbery (Count Two).  (Doc. No. 10-1, Exh. 5.)

The trial court conducted a sentencing hearing on November 1, 2005, at which time Diaz was sentenced to fifteen years to life for the murder charge (Counts One) and eight years for aggravated robbery (Count Two).  (Doc. No. 10-1, Exh. 6.)  The trial court ordered the sentences for Counts One and Two to be served consecutively and imposed two three-year firearm specifications for both counts.  (*Id.*)  The firearm specifications were to be served concurrently to each other, but consecutively to the sentences for Counts One and Two, for an aggregate sentence of twenty-six years to life.  (*Id.*)

**B.      Direct Appeal**

On December 2, 2005, Diaz, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court").  (Doc. No. 10-1, Exh. 7.)  In his appellate brief, Diaz raised the following assignments of error:

> I.      The trial court erred in denying Appellant's motion to suppress his statement.
>
> II.     The sentence imposed by the trial court was excessive and contrary to law when the sentence exceeded the minimum term of imprisonment on the basis of findings made by the trial judge pursuant to a facially unconstitutional statutory sentencing scheme.
>
> III.    The trial court abuse its discretion when it failed to inquire as to appellant's repeated requests for new counsel.

3

(Doc. No. 10-1, Exh. 8.)  The State filed a brief in response.  (Doc. No. 10-1, Exh. 9.)

On August 31, 2007, the state appellate court affirmed Diaz's convictions, but remanded for re-sentencing due to a recent Supreme Court of Ohio decision regarding "certain sections of Ohio's felony sentencing scheme."  (Doc. No. 10-1, Exh. 10.)  *See also State v. Diaz,* 2007 WL 2458448, *3 (Ohio App. 6th Dist. Aug. 31, 2007).

On February 4, 2008, Diaz, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 11.)  That same date, Diaz filed a Motion for Leave to File Delayed Appeal with the Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 12.)

On March 26, 2008, the Supreme Court of Ohio denied Diaz's Motion for Leave to File Delayed Appeal and dismissed his case.  (Doc. No. 10-1, Exh. 13.)

**C.      Remand Proceedings in State Trial Court**

On remand from the state appellate court's August 31, 2007 direct appeal decision, the state trial court conducted a resentencing hearing on September 27, 2007.  (Doc. No. 10-1, Exh. 18.)  On October 1, 2007, the trial court sentenced Diaz to fifteen years to life for the murder charge (Counts One) and eight years for aggravated robbery (Count Two), to be served consecutive to each other.  (*Id.*)  The trial court also imposed two three-year firearm specifications, to be served concurrently to each other, but consecutively to the sentences for Counts One and Two.  (*Id.*)  This again resulted in an aggregate sentence of twenty-six years to life.  (*Id.*)  Diaz did not appeal the state trial court's resentencing judgment.

**D.      Delayed Application to Reopen Appeal under Ohio App. R. 26(B)**

On May 5, 2009, Diaz filed a *pro se* Motion For Leave to File a Delayed Application to Reopen Appeal Pursuant to Ohio App. R. 26(B)(2)(b).  (Doc. No. 10-1, Exh. 37.)  He also filed a

4

Motion for Appointment of Counsel to assist with his Application to Reopen.  (Doc. No. 10-1, Exh. 38.)  The State filed a brief in opposition.  (Doc. No. 10-1, Exh. 39.)

On May 27, 2009, the state appellate court declined to reopen Diaz's appeal and denied his Motion for counsel.  (Doc. No. 10-1, Exh. 40.)

On June 29, 2009, Diaz filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 41.)  Within his Memorandum in Support of Jurisdiction, he asserted the following proposition of law:

> The Sixth Appellate District Court of Appeals committed an error of law by denying appellant's application for reopening the direct appeal pursuant to App.R.26(B)(2)(b), when a good cause was present.  (Decision and Judgment: May 27, 2009)

(Doc. No. 10-1, Exh. 42.)  On July 6, 2009, the State filed a memorandum in response.  (Doc. No. 10-1, Exh. 43.)

On August 26, 2009, the Supreme Court of Ohio dismissed the appeal "as not involving any substantial constitutional question."  (Doc. No. 10-1, Exh. 44.)

**E.** **Post-Conviction Filings**

*1.* *Petition for Post Conviction Relief*

On July 18, 2006, Diaz filed a *pro se* pleading with the state trial court captioned "Petition for Post Conviction Relief"  (Doc. No. 10-1, Exh. 14.)  This filing raised the following claims:

> I.     Petitioner was denied his constitutional rights of due process and complete trial by an impartial jury as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 5, 10, and 16 of the Ohio Constitution as the result of trial court error in reference to improper jury instructions.
>
> II.    Petitioner was denied his constitutional right to effective assistance of

5

counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution because trial counsel failed to object to improper jury instructions.

III.     Petitioner was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution because trial counsel neglected to move for acquittal pursuant to Criminal Rule 29.

IV.     Petitioner was denied his constitutional right to due process and proper sentencing as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections Two, Five, and Sixteen of the Ohio Constitution.

V.      Petitioner was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and by Article I, Section 10 of the Ohio Constitution because trial attorney failed to raise objection to improper sentencing.

VI.     Petitioner was denied his constitutional right of due process and equal protection as guaranteed by the Fifth and Fourteenth Ammendments[sic] of the United States Constitution and Article I, Sections Two and Sixteen of the Ohio Constitution based upon the cumulative effect doctrine.

(*Id*.)  On July 27, 2006, Diaz filed a second "Petition for Post Conviction Relief," which raised the same claims as his July 18, 2006 filing.  (Doc. No. 10-1, Exh. 15.)

The State filed a response in opposition.  (Doc. No. 10-1, Exh. 16.)  On September 11, 2006, the state trial court denied Diaz's Motion.  (Doc. No. 10-1, Exh. 17.)

        2.      *Motions to Vacate*

On May 20, 2008, Diaz filed another *pro se* pleading with the state trial court, captioned "Motion to Vacate and Void Lesser Included Offense"  (Doc. No. 10-1, Exh. 19.)  Within this Motion, Diaz requested the state trial court "vacate and void" Count One, "in light of [trial]

6

counsel's ineffectiveness.  (*Id.*)  On June 13, 2008, the state trial court denied this Motion.  (Doc. No. 10-1, Exh. 20.)  On July 14, 2008, Diaz filed a Notice of Appeal with the state appellate court.  (Doc. No. 10-1, Exh. 24.)

On June 16, 2008, Diaz, proceeding *pro se*, filed a "Motion to Vacate, Set Aside, or Modify Judgement[sic] and Sentence."  (Doc. No. 10-1, Exh. 21.)  Within this Motion, Diaz raised the following argument:

> Appellant's indictment did not include all of the essential elements of the offenses charged violating appellant's state and federal constitutional rights.

(*Id.*)  The State filed a response in opposition.  (Doc. No. 10-1, Exh. 22.)  On July 2, 2008, the state trial court denied Diaz's Motion.  (Doc. No. 10-1, Exh. 23.)  On July 28, 2008, Diaz filed a Notice of Appeal with the state appellate court.  (Doc. No. 10-1, Exh. 25.)

On August 1, 2008, the State file a Motion to Consolidate Diaz's appeals.  (Doc. No. 10-1, Exh. 26.)  The state appellate court granted this Motion, and consolidated Diaz's two pending appeals on August 8, 2008.  (Doc. No. 10-1, Exh. 27.)

Diaz subsequently filed a Brief with the state appellate court on August 11, 2008.  (Doc. No. 10-1, Exh. 28.)  Within this Brief, Diaz presented the following issues for review:

> 1. Can defects in an indictment be raised in post-conviction proceedings?
>
> 2. Does *Colon* apply to the facts of this case?
>
> 3. Does a material element or ingredient, as being omitted from the indictment affect the validity of defendant's indictment?
>
> 4. Does court appointed trial counsel render ineffective assistance of counsel when defendant's indictment was defective and resulted in a wrong conviction?

(*Id.*)  The State filed a Brief in response.  (Doc. No. 10-1, Exh. 29.)

7

On September 8, 2008, Diaz filed a "Motion for Leave to File Reply/Motion for Leave to Supplement Brief Instanter" with the state appellate court. (Doc. No. 10-1, Exh. 30.) The state appellate court denied this Motion. (Doc. No. 10-1, Exh. 31.) On December 5, 2008, the state appellate court affirmed the state trial court's decision to deny Diaz's Motions to Vacate. (Doc. No. 10-1, Exh. 32.)

On January 1, 2009, Diaz filed a Notice of Appeal and Memorandum in Support of Jurisdiction with the Supreme Court of Ohio. (Doc. No. 10-1, Exh. 33, 34.) The State filed a Memorandum in Opposition. (Doc. No. 10-1, Exh. 35.) The Supreme Court of Ohio denied Diaz's leave to appeal and dismissed his appeal on April 15, 2009. (Doc. No. 10-1, Exh. 36.)

> ### 3. _Petition to Vacate or Set Aside Judgment of Conviction or Sentence_

On October 16, 2012, Diaz, proceeding _pro se_, filed several motions with the state trial court. His first motion was captioned "Petition to Vacate or Set Aside Judgment of Conviction or Sentence." (Doc. No. 10-1, Exh. 45.) Within this Petition, Diaz requested an evidentiary hearing and made the following claims:

1.  Petitioner requested new counsel and Judge denied the request.

    Short statement of facts supporting the claim: Trial counsel was ineffective and would not object to anything.

2.  Petitioner was denied a fair trial by the trial judge.

    Short statement of facts supporting the claim: The trial judge had denied me my rights by dening[sic] the request for new Counsel.

(_Id._) Diaz filed a Motion for Appointment of Counsel and Motion for Expert Assistance in connection with this Petition. (Doc. No. 10-1, Exh. 46, 47.)

Diaz also filed a _pro se_ pleading captioned "Motion for Leave for Modification of

Sentence."  (Doc. No. 10-1, Exh. 48.)  The State filed responses in opposition to all Diaz's

October 16, 2012 filings.  (Doc. No. 10-1, Exh. 49, 50.)

On October 26, 2012, the state trial court issued a judgment denying all of the October

16, 2012 filings.  (Doc. No. 10-1, Exh. 51.)

### 4.    *Motion for the Production of Trial Transcripts*

On February 25, 2015, Diaz, proceeding *pro se*, filed a Motion for the Production of Trial

Transcripts.  (Doc. No. 10-1, Exh. 62.)  The state trial court denied this Motion on March 3,

2015, finding Diaz was not entitled to a transcript as there was no pending appeal.  (*Id.*).

### 5.    *Motion for Relief from Judgment*

On April 15, 2016, Diaz filed a *pro se* "Motion for Relief from Judgment."  (Doc. No. 10-

1, Exh. 52.)  Within this Motion, Diaz argued (1) the indictment was not signed; (2) the state trial

court failed to instruct on involuntary manslaughter; and (3) a new trial was required as there was

no trial transcript.  (*Id.*)  The state trial court denied this Motion on April 25, 2016.  (Doc. No.

10-1, Exh. 53.)

Diaz filed a Notice of Appeal on May 18, 2016.  (Doc. No. 10-1, Exh. 54.)  Within his

Brief, Diaz raised the following assignments of error:

I.     The indictment is fatally defective and therefore a legal nullity, thus
all subsequent proceedings are void and the judgment of conviction
and sentence must be vacated and the case dismissed with prejudice.

II.    The trial court erred, and due process was denied, when the court
failed to instruct the jury on a lesser included offense of involuntary
manslaughter.

III.   Because there is no record of trial court proceedings, the appellant is
entitled to a new trial pursuant to the tenets set forth by the Ohio
Supreme Court in *State v. Jones*, 71 Ohio St.3d 293, 1994-Ohio-162,
643 N.E.2d 547.

9

    IV.    The trial court abused its discretion for failing to hold a hearing on appellant's motion for relief that was filed on April 15, 2016.

(Doc. No. 10-1, Exh. 55.)  The State filed a Brief in Opposition.  (Doc. No. 10-1, Exh. 56.)

On October 28, 2016, the state appellate court found Diaz "has not met the requirements for a timely petition for his successive petition" and concluded Diaz's "assignments of error are found not well-taken."  (Doc. No. 10-1, Exh 57.)

On November 30, 2016, Diaz filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 10-1, Exh. 58.)  Within his Memorandum in Support of Jurisdiction, he presented the following propositions of law:

    I.    The indictment is fatally defective and therefore a legal nullity, thus all subsequent proceedings are void and the judgment of conviction and sentence must be vacated and the case dismissed with prejudice.

    II.    The trial court erred, and due process was denied, when the court failed to instruct the jury on a lesser included offense of involuntary manslaughter.

    III.    Because there is no record of trial court proceedings, the appellant is entitled to a new trial pursuant to the tenets set forth by the Ohio Supreme Court in *State v. Jones*, 71 Ohio St.3d 293, 1994-Ohio-162, 643 N.E.2d 547.

    IV.    The trial court abused its discretion for failing to hold a hearing on appellant's motion for relief that was filed on April 15, 2016.

(Doc. No. 10-1, Exh. 59.)  The State filed a Waiver of Memorandum in Response.  (Doc. No. 10-1, Exh. 60.)

On April 19, 2017, the Supreme Court of Ohio declined to accept jurisdiction of Diaz's appeal.  (Doc. No. 10-1, Exh. 61.)

**F.**     **Federal Habeas Petition**

On May 16, 2017,[1] Diaz filed a Petition for Writ of Habeas Corpus in this Court and

asserted the following grounds for relief:

> **GROUND ONE**:     The indictment is fatally defective
>
> **GROUND TWO:**     Defendant was deprived of a defense at trial, that
>                     being an involuntary manslaughter instruction on the
>                     [aggravated] murder charge.
>
> **GROUND THREE:**   A new trial is required because there is no record of
>                     the previous trial.
>
> **GROUND FOUR:**    Trial court abused its discretion for failing to hold a
>                     hearing on Defendant's motion.

(Doc. No. 1 at 6-11.)

On December 11, 2017, Warden John Coleman ("Respondent") filed his Return of Writ.

(Doc. No. 10.)  Diaz filed a Traverse on February 2, 2018.  (Doc. No. 12.)

### III.  Law and Argument – Statute of Limitations

**A.**     **One-Year Limitation Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a

one-year limitations period in a habeas action brought by a person in custody pursuant to the

judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the

latest of--

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;

---

[1]     Under the mailbox rule, the filing date for a *pro se* petition is the date a petitioner
delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While
the Petition herein did not arrive at the Court for filing until June 19, 2017, Diaz
reports he placed it in the prison mailing system on May 16, 2017.  (Doc. No. 1 at
16.)  Thus, the Court will consider the Petition as filed on May 16, 2017.

11

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsections (A) and (D) are relevant to this Petition and will be discussed below.[2]

## B.      One-Year Limitation – § 2244(d)(1)(A)

Respondent asserts Diaz's Petition is time-barred because he did not file within the one-year limitations period.  (Doc. No. 10 at 17.)  Respondent contends there "are two significant time periods where the one year statute of limitations expired" and each period "exceeds one year."  (*Id.*)  Respondent asserts "Diaz cannot claim that the facts of his pending federal habeas petition were such that he was unavoidably prevented from discovering them."  (*Id*.)  Respondent acknowledges Diaz filed several post-conviction petitions, but "the start dates in both cases were not in connection with Diaz' direct appeal, Diaz does not get tolling for a hypothetical appeal to the United States Supreme Court."  (*Id.*)

Diaz asserts the statute of limitations commenced on April 19, 2017, as it he "was of the understanding that he had 1-year after the state's highest court filed a final entry regarding each of the grounds for relief raised in the federal habeas petition."  (Doc. No. 12 at 8.)

Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

---

[2]      Diaz does not argue the limitations period should commence at a later date for any of the reasons set forth in §§2244(d)(1)(B) or (C).

12

seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The Sixth Circuit has found where a

conviction has been affirmed, but there is a separate line of review of a new sentence imposed at

re-sentencing, "the judgment becomes final after direct review of the new sentence."  *Rashad v.

Lafler*, 675 F.3d 564, 568 (6th Cir. 2012)(citing *Burton v. Stewart*, 549 U.S. 147 (2007)).   This is

because, for AEDPA purposes, "final judgment in a criminal case means sentence.  The sentence

is the judgment."  *Id.*(quoting *Burton*, 549 U.S. 159.)(internal quotations omitted).  Thus, the

one-year statute of limitations clock is not triggered until sentencing is completed.  *Kozic v.

Sloan,* 2017 WL 6806261, *6 (N.D. Ohio Sept. 20, 2017).  *See also Rivera v. Bunting*, 2016 WL

6652786, *4 (N.D. Ohio July 15, 2016) *report and recommendation adopted by* 2016 WL

6649283 (N.D. Ohio Nov. 10, 2016); *Coats v. Sheldon,* 2012 WL 7037778, at *7 (N.D. Ohio

Aug. 20, 2012), *report and recommendation adopted by* 2013 WL 474721 (N.D. Ohio Feb. 7,

2013).

        This one-year limitation is tolled during the time  " 'a properly filed application for State

postconviction or other collateral review ... is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546

U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct.

2134, 153 L.Ed.2d 260 (2002); accord *Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th

Cir.2003).  "The time that an application for state postconviction review is 'pending' includes the

period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice

of appeal, provided that the filing of the notice of appeal is timely under state law."  *Id.*  Only

"properly filed" applications for postconviction relief or collateral review toll the statute of

limitations, and "a state postconviction petition rejected by the state court as untimely is not

'properly filed' within the meaning of § 2244(d)(2)."  *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 3,

169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D.Ohio Jan.8, 2009).  Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe*, 2009 WL 73905 at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir.2007).

Here, Diaz was originally sentenced on November 3, 2005 and timely appealed to the state appellate court on December 2, 2005.  (Doc. No. 10-1, Exh. 6, 7.)  The state appellate court affirmed his conviction, but remanded for re-sentencing in a decision that was journalized on August 31, 2007.  (Doc. No. 10-1, Exh. 10.)  The state trial court resentenced Diaz on October 1, 2007.  (Doc. No. 10-1, Exh. 18.)  Under Ohio law, Diaz had thirty (30) days, or until October 31, 2007,  to file a timely direct appeal of his resentencing.  *See* Ohio R. App. P. 4(A).  Thus, the Court finds Diaz's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on October 31, 2007,[3] thirty (30) days after the state trial court journalized its resentencing decision and the time to file a timely notice of appeal with the state appellate court expired.  Accordingly, the Court finds the limitations period commenced on November 1, 2007 and, absent tolling,

---

[3]     As noted *supra*, Diaz asserts the statute of limitations commenced on April 19, 2017, as it he "was of the understanding that he had 1-year after the state's highest court filed a final entry regarding each of the grounds for relief raised in the federal habeas petition."  (Doc. No. 12 at 8.)  This is an incorrect reading of § 2244(d)(1)(A). Diaz's misunderstanding of the statute and his *pro se* status does not waive the requirements of the statute.  *See Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness").

expired one year later, on November 1, 2008.

However, Diaz filed multiple post-judgment motions which served to toll the statutory limitations period at various points.  A review of the record indicates the limitations period initially ran uninterrupted for 95 days, from November 1, 2007 to February 4, 2008.  On February 4, 2008, Diaz filed a Motion for Delayed Appeal with the Supreme Court of Ohio, which tolled the statute of limitations.  (Doc. No. 10-1, Exh. 12.)  The Supreme Court of Ohio denied Diaz's Motion for Delayed Appeal on March 26, 2008, and the limitations period began to run again on March 27, 2008.  (Doc. No. 10-1, Exh. 13.)

The statute then ran for 55 days, until Diaz filed his first Motion to Vacate on May 20, 2008.  (Doc. No. 10-1, Exh. 19.)  The limitations period was again tolled until the state trial court denied his Motion on June 13, 2008.  (Doc. No. 10-1, Exh. 20.)  The statute of limitations period resumed on June 14, 2008, but only ran for 2 days, when Diaz filed his second Motion to Vacate on June 16, 2008.  (Doc. No. 10-1, Exh. 21.)  The state trial court denied his Motion on July 2, 2008, and the limitations period resumed on July 3, 2008.  (Doc. No. 10-1, Exh. 23.)

The statute ran for 11 days, until Diaz filed Notice of Appeal of the state trial court's denial of his first Motion to Vacate on July 14, 2008.  (Doc. No. 10-1, Exh. 24.)  The statute of limitations remained tolled[4] until December 5, 2008, when the state appellate court affirmed the state trial court's decision to deny both of Diaz's Motions to Vacate.  (Doc. No. 10-1, Exh. 32.)  The limitations period ran for 26 days, until Diaz filed his Notice of Appeal with the Supreme

---

[4]     The Court notes in the interim of Diaz filing a Notice of Appeal on July 14, 2008, Diaz proceeded to also file a Notice of Appeal on July 28, 2008, appealing the state trial court's decision to deny his second Motion to Vacate.  (Doc. No. 10-1, Exh. 25.) These appeals were eventually consolidated into one action and both were denied in the state appellate court's December 5, 2008 decision.  (Doc. No. 10-1, Exh. 27, 32.)

15

Court of Ohio on January 1, 2009.  (Doc. No. 10-1, Exh. 33.)  The limitations period was again

tolled until the Supreme Court of Ohio dismissed Diaz's Appeal on April 15, 2009.  (Doc. No.

10-1, Exh. 36.)

The statute of limitations period resumed on April 16, 2009 and ran for 20 days.  On May

5, 2009, Diaz filed his Motion for Leave to File a Delayed Application to Reopen Appeal, which

again served to toll the statute.  (Doc. No. 10-1, Exh. 37.)  The state appellate denied Diaz's

Motion on May 27, 2009 as untimely.[5]  (Doc. No. 10-1, Exh. 40.)  The limitations period then ran

for 32 days, from May 28, 2009 to June 29, 2009, when Diaz filed his Notice of Appeal with the

Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 41.)  At this point, 241 days of the statutory

limitations period had elapsed.  Thus, when the limitations period resumed on August 27, 2009,

after the Supreme Court dismissed Diaz's appeal, it ran for 24 days until it expired on September

20, 2009.[6]  (*See* Doc. No. 10-1, Exh. 44.)

While Diaz filed several additional motions after this date, including a Petition to Vacate

Judgment on October 16, 2012 and a Motion for Relief from Judgment on April 15, 2016, they

did not have any further tolling effect, as the statute of limitations had already expired.  *See*

*Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir.2003).

Accordingly, because the statutory limitations period expired on September 20, 2009 and

---

[5]     The Court is not convinced this May 9, 2009 Motion was "properly filed" and
subject to statutory tolling.  *See Allen*,128 S.Ct. at 3 ("a state postconviction petition
rejected by the state court as untimely is not 'properly filed' within the meaning of
§ 2244(d)(2).").  Assuming, *arguendo*, it was not properly filed, Diaz's statute of
limitations would have run uninterrupted from April 16, 2009 for 76 days, until it
expired on July 1, 2009.  Regardless of which calculation is used, his federal habeas
Petition was filed after the expiration of the statute of limitations.

[6]     The Court has attached an Appendix of the relevant dates used in calculating the
statute of limitations.  (*See* Appendix A)

Diaz did not file his habeas petition until May 16, 2017, it is untimely under §2244(d)(1)(A). Therefore, unless equitable tolling is appropriate, Diaz's Petition should be dismissed as time-barred.

**C.      Factual Predicate** – **§ 2244(d)(1)(D)**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date.

Diaz argues the statute of limitations should not bar his Petition because he was not aware of the factual predicate of his third Ground for Relief[7] until he received a letter from the Lucas County Clerk's Office informing him "there are no transcripts in your file."  (Doc. No. 12 at 3, Doc. No.1-8 at 1.)  The Court rejects this argument.

Diaz's assertion "there is no record of the previous trial" is incorrect.  (*See* Doc. No. 1 at 9.)  Respondent was able to produce a transcript of Diaz's trial and re-sentencing.  (*See* Doc. Nos. 10-4, 10-5, 10-6, 10-7.)  A review of the state trial court docket shows the trial transcript was filed on February 8, 2006.  (Doc. No. 10-1, Exh. 62.)  Diaz's appellate counsel on direct appeal had access to the trial transcript when she filed Diaz's Appellant Brief in September 2006. (Doc. No. 10-1, Exh. 8.)  Thus, Diaz's argument he "discovered" the lack of a trial transcript is wrong.

Moreover, the Court finds Diaz's argument particularly unpersuasive because he waited until February 2015, nearly eight years after his 2007 re-sentencing, to file a motion with the state trial court in an effort to obtain his transcripts.  (Doc. No. 10-1, Exh. 62.)  The state trial

---

[7]      In his Petition, Diaz's third Ground for Relief is "A new trial is required because there is no record of the previous trial."  (Doc. No. 1 at 9.)

court denied his Motion, noting Diaz did not have a pending appeal.  (Doc. No.1-7 at 2.)  Diaz

then contacted the Lucas County Clerk of Courts, and a deputy clerk informed him in October

2015 "there are no transcripts in your file."  (Doc. No. 1-8, at 1.)  It is not reasonable of Diaz to

expect the state trial court to have retained his nearly-decade old trial transcript when no appeal

is pending.  *See Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001) ("As time

passes, and certainly once a state sentence has been served to completion, the likelihood that trial

records will be retained by the local courts and will be accessible for review diminishes

substantially.").

Finally, even if Diaz did encounter difficulty in obtaining a trial transcript, this did not

impede his ability to file a federal habeas petition.  *See Hall v. Warden*, *Lebanon Correctional

Inst*., 662 F.3d 745, 751 (6th Cir. 2011)("access to the trial transcript – although understandably

helpful to petitioners – is not necessary to file a habeas petition, as was demonstrated in the

present case by the fact Hall ultimately filed his petition without ever having received the

transcript.").  Indeed, Diaz has been able to file numerous petitions and motions at both the state

trial and appellate levels.  There is nothing to suggest he was prevented from filing a timely

habeas petition due to the alleged failure of the state trial court to provide him with a copy of the

transcript eight years after his resentencing.

Accordingly, the Court rejects Diaz's suggestion the AEDPA statute of limitations did not

start to run until he was informed there was no trial transcript in his state court file.  The Court

further finds Diaz has failed to otherwise identify any factual predicate that would justify a later

start date[8] of the AEDPA statute of limitations period.  Therefore, unless equitable tolling is

---

[8]     Within his Traverse, Diaz asserts since "Ground One is a claim that the indictment
in this case is fatally defective, it is among the small ground of claims that can be

appropriate, Diaz's Petition should be dismissed as time-barred.

**E.      Equitable Tolling**

The Supreme Court has held the AEDPA statute of limitations is subject to equitable

tolling in appropriate circumstances.  *Holland v. Florida,* 560 U.S. 631, 645 (2010).  In order to

be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing

his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented

timely filing.  *Holland,* 130 S.Ct. at 2565.  *See also Hall*, 662 F.3d at 749; *Griffin v. Rogers*, 308

F.3d 647, 653 (6th Cir. 2002).  A court should be "much less forgiving ... where the claimant

failed to exercise due diligence in preserving his legal rights."  *Vroman*, 346 F.3d at 605, quoting

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990);

accord *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir.2003).

The Court finds Diaz has failed to demonstrate he is entitled to equitable tolling.  Diaz

argues he was "diligently pursuing . . . a transcript of the trial court proceedings so that he could

form the factual and legal basis for filing an application to reopen his appeal under Rule 26(b) of

the Ohio Rules of Appellate Procedure."  (Doc. No. 12 at 5.)  However, the "unavailability of or

delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling."

---

raised at any time, and is not barred by . . . any limitations period."  (Doc. No. 12 at
7.)  However, the Sixth Circuit has held a defective state judgment "does not lead to
the conclusion that there was no judgment for the purpose of [AEDPA]'s one year
statute of limitations."  *Frazier v. Moore,* 252 Fed. App'x 1, 5 (6th Cir. Oct. 17,
2007).  *See also King v. Bunting*, 2014 WL 2864422, at *7 (N.D. Ohio June 24,
2014); *Alexander v. Bunting*, 2014 WL 2593982, at *6 (N.D. Ohio June 10, 2014).
Indeed, even if "a state court judgment may have been procured in violation of state
or federal law [this] does not, however, render the judgment null" under AEDPA.
*Id*.  Moreover, the "fact that [a petitioner] raises a jurisdictional challenge to his
conviction does not exempt him from the habeas statute of limitations."  *Briscoe v.
Eppinger*, 2018 WL 3390141, at *2 (6th Cir. May 31, 2018).

*Hall*, 662 F.3d, 750-751.  *See also Bohanan v. Moore,* 2016 WL 7034239, *3 (S.D. Ohio Dec. 2, 2016)(finding a petitioner's inability to obtain the transcripts of sentencing proceedings irrelevant to the issue of equitable tolling), *adopted by* 2017 WL 128522 (N.D. Ohio Jan 12, 2017).

The Court disagrees that Diaz has been diligent in pursuing his rights.  Both Diaz's direct appeal to the Supreme Court of Ohio and Application for Reopening were untimely.  (*See* Doc. No. 10-1, Exh. 12, 37.)  Morever, after the state appellate court denied Diaz's Application for Reopening[9] in May 2009, and the Supreme Count dismissed his appeal in August 2009, Diaz waited over seven years to file his federal habeas petition.  (*See* Doc. No. 10-1, Exh. 40, 44.)  Diaz does not provide any explanation as to why he filed his federal habeas Petition in May 2017, over seven years after the AEDPA statute of limitations had run.

Given that Diaz has been able to file a multitude of post-conviction motions with the state courts, there does not appear to be any "extraordinary circumstance" which prevented him from filing a timely federal habeas petition.  Diaz asserts the "extraordinary circumstances that stood in his way to prevent a timely filing was the bizarre manner in which state agents bounced and spun him again and again, until they finally realized that the Petitioner intended to remain diligent, then he was told that the transcripts didn't exist in an apparent attempt to make him go away."  (Doc. No. 12 at 5.)  This suggestion the state trial court was attempting to "make him go away" and prevent him from reviewing his transcripts is unpersuasive.  Moreover, this argument

---

[9]    The Court notes Diaz, within his Traverse, requests this Court instruct the state appellate court to permit him to file another Application for Reopening.  (Doc. No. 12 at 7.)  It is not within this Court's discretion or power to order the state appellate court to re-consider an Application for Re-opening which it has already reviewed and determined was untimely.

does not provide an explanation as to the untimely filing of Diaz's federal habeas petition, as having access to the state trial transcript was not necessary for him to file his petition.  *See Hall*, 662 F.3d at 751.  In order to establish "extraordinary circumstances," a petitioner must show the circumstances are "related to something that is essential to the petitioner's filing of his claim." *Cannon v. Bunting*, 2014 WL 6687220, *2 (N.D. Ohio Nov. 26, 2014).

The Court also rejects any suggestion Diaz's *pro se* status constitutes "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015). Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 464 (6th Cir. 2012)("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing").

In sum, because Diaz failed to exercise his rights diligently and no extraordinary circumstances prevented him from filing his habeas Petition, the Court finds equitable tolling is not warranted in this case.

**F.      Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id.* at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence."  *Id.* (quoting *Schlup*, 513 U.S. at 332).

Here, Diaz does not raise an actual innocence exception argument.  (*See* Doc. No. 12.) He does not identify any new, reliable evidence of his actual innocence; i.e., exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available to him at the time of his underlying criminal proceedings.  *See Schlup*, 513 U.S. at 324. Rather, he focus on the fact the state trial court did not provide him with a trial transcript, arguing it prevented him from discovering "several substantial constitutional violations [which] had been

overlooked by appointed appellate counsel." (Doc. No. 12 at 5.)  Accordingly, the Court finds

Diaz has not demonstrated he is entitled to the actual innocence exception.

In sum, as the statutory limitations period expired on September 20, 2009 and Diaz did

not file his habeas petition until May 16, 2017, it is well beyond the AEDPA statute of

limitations.  Thus, the Court finds the instant Petition is time-barred under §2244(d)(1).

### IV.  Law and Argument – Procedural Default

Respondent argues that even if Diaz's claims were not time-barred §2244(d)(1), they

would be barred due to procedural default.  (Doc. No. 10 at 20.)  Respondent asserts Diaz first

raised his federal habeas claims in "an untimely motion for relief from judgment."  (*Id*.)

Respondent maintains Diaz is unable to establish cause, prejudice, or miscarriage of justice in

order to avoid procedural default.  (*Id*.)

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure

to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v.*

*Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97

S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.

*Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural

rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785

F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule,

the state court declines to reach the merits of the issue, and the state procedural rule is an

independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[10]  *Id.*

---

[10] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim
is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the

23

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have

---

petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.*

*LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir.

1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that

the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629

(6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286

(1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.

722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a

petitioner must "support his allegations of constitutional error with new reliable

evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115

S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D.

Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

With these principles in mind, the Court finds each of Diaz's four Grounds for Relief are

procedurally defaulted.  Diaz did not raise any of these claims in his direct appeal.  Rather, Diaz

initially presented his first three Grounds for Relief[11] in an April 15, 2016 post conviction filing

---

[11]     These first three Grounds for Relief are:

    I.     The indictment is fatally defective and therefore a legal nullity, thus all subsequent proceedings are void and the judgment of conviction and sentence must be vacated and the case dismissed with prejudice.

    II.    Due Process was denied when the defendant was deprived of the defense of involuntary manslaughter for the charged offense of aggravated murder.

    III.   Because there is no record of trial court proceedings, the appellant is entitled to a new trial pursuant to the tenets set forth by the Ohio Supreme Court in *State v. Jones*, 71 Ohio St.3d 293, 1994-Ohio-162, 643 N.E.2d 547.

with the state trial court.  (Doc. No. 10-1, Exh. 52.)  The state trial court denied this petition, finding the indictment was properly signed and the trial transcripts had been filed.  As to Diaz's argument regarding the manslaughter instruction, the state trial court dismissed it on the basis of *res judicata*.  (Doc. No. 10-1, Exh. 53.)

Thereafter, Diaz filed an appeal with the state appellate court, again raising his first three Grounds for Relief and adding his fourth Ground for Relief.[12]  (Doc. No. 10-1, Exh. 54, 55.)  The state appellate court affirmed the judgment of the state trial court, finding Diaz's post-conviction filing to be untimely.  (Doc. No. 10-1, Exh. 57.)  Within its decision, the state appellate court found Diaz had, under O.R.C. § 2953.21(A)(2), 180 days after the trial transcript was filed to file a petition for post conviction relief.  (*Id.*)  The state appellate court noted "the transcript was filed in this court on the direct appeal on February 8, 2006.  This petition is filed more than a decade since the event."  (*Id.*)  The state appellate court concluded since Diaz's petition was untimely, the "trial court was without jurisdiction to entertain the petition."  (*Id.*)  Diaz filed an appeal with the Supreme Court of Ohio, which declined to accept jurisdiction of Diaz's appeal.  (Doc. No. 10-1, Exh. 59, 61.)

The Court finds Diaz's failure to timely file his post-conviction petition resulted in procedural default.  As noted by the state appellate court, the time for Diaz to timely seek relief

---

(Doc. No. 1-2.)

[12]   IV.   The trial court abuse its discretion for failing to hold a hearing on appellant's motion for relief that was filed on April 15, 2016.

(Doc. No. 1-2.)

in a post-conviction filing had long passed when he initially raised his Grounds for Relief.[13]

Ohio's timeliness requirements in post-conviction proceedings constitute an independent and

adequate state ground for declining to review the merits of a petitioner's claims and finding

procedural default.  *Townsend v. Gansheimer*, 2009 WL 589332, * 7 (N.D.Ohio March 9, 2009)

(adopting the report and recommendation of Perelman, M.J.); *Wolff v. Tibbles*, 2014 WL

2694227 at * 14 (N.D. Ohio June 13, 2014) (adopting the report and recommendation of

Vecchiarelli, M.J.).  Further, there is nothing in the Petition suggesting a state court remedy

continues to be available to Diaz to raise any of his federal habeas Grounds for Relief.  Thus, the

Court finds Diaz's claims are procedurally defaulted.

Moreover, Diaz has failed to demonstrate either cause or prejudice sufficient to overcome

the procedural default.  It is unclear why Diaz waited until 2016 to raise his Grounds for Relief in

a post-conviction filing.  Diaz suggests this was due to his inability[14] to obtain trial transcripts.

(Doc. No. 12 at 12.)  However,  as discussed at length *supra*, the trial transcripts were filed in

---

[13]     At the time of Diaz's sentencing, Ohio law mandated a postconviction petition was
due within "one hundred eighty days after the date on which the trial transcript is
filed in the court of appeals in the direct appeal of the judgment of conviction or
adjudication [.]" O.R.C. § 2953.21(A)(2).  Because the court reporter's office filed
the transcript on February 8, 2006 (Doc. 10–1, Exh. 62), Diaz's deadline was August
7, 2006; his petition was thus over nine years late.

[14]     Diaz argues his inability to obtain the trial transcripts precluded "him from being
able to file an application to reopen his appeal under App. R. 26(B)."  (Doc. No. 12
at 12.)  However, Diaz did not raise any of his federal habeas Petition Grounds for
Relief in his untimely Application for Reopening.  (Doc. No. 10-1, Exh. 37.)  While
he references his indictment, he argues it is insufficient due to a failure to "state an
offense."  (*Id.*)  In his federal habeas Petition, he argues his indictment is defective
due to it not being "signed by the Grand Jury Foreperson."  (Doc. No. 1-2 at 5.)
Thus, it is unclear why Diaz's supposed inability to file a timely Application to
Reopen explains why he did not initially raise his Grounds for Relief until an April
2016 post-conviction filing.

28

2006.  Given that Diaz was able to file three post-conviction petitions in 2008 alone, the Court can find no reason or explanation for Diaz's decision to wait until April 2016 to initially present any of these arguments for review by the state court.

Finally, Diaz has not provided any argument regarding the actual innocence exception. Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

Accordingly, and in light of the above, it is recommended the Court find that, in addition to being time-barred, Diaz's claims are procedurally defaulted.

## V.   Request for Hearing

While Diaz has not made a formal motion, within his Petition he does request a hearing to "be held by this Court on any or all of the grounds for relief."  (Doc. No. 1-2 at 15.)  He does not advance any further argument or explanation as to this request.

"[A] district court shall not hold an evidentiary hearing on a habeas claim unless the petitioner, who failed to develop the factual basis of the claim in state court, 'shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence.'"  *Freeman v. Trombley*, 483 Fed. App'x 51, 66 (6th Cir. 2012) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  "Diligence for purposes of § 2254(e)(2) depends on 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.' "  *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2012) (quoting *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir.2004)).

The Court finds Diaz has failed to provide any basis for an evidentiary hearing.  Diaz has

not provided any reasoning for his request for an evidentiary hearing.  He has not specified what evidence or testimony he would present, nor has he provided any argument which demonstrates why an evidentiary hearing is required.  Moreover, as discussed *supra*, his entire Petition is time-barred and procedurally defaulted.

Accordingly, the Court finds an evidentiary hearing is not warranted. Diaz's request should therefore be denied.

### VI. Conclusion

For all the reasons set forth above, the undersigned recommends the Petition be DISMISSED.

Date:   August 24, 2018                         *s/ Jonathan D. Greenberg*
                                                Jonathan D. Greenberg
                                                United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**